Gail ANDERSON, Beverly Johnson, Marcia Wellnitz and
Mary Ann Zifko, Plaintiffs-Appellants,

Richard ANDERSON, Plaintiff,

v.

SCHOOL DISTRICT OF ASHLAND and the Board of Educa-
tion of the School District of Ashland, Defendants-
Respondents.†

Court of Appeals

*No. 93–1777. Submitted on briefs December 8, 1993.—Decided
December 28, 1993.*

(Also reported in 510 N.W.2d 822.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Stephen Pieroni, John R. Davis*, and *Chris Galinat* of Madison.

For the defendants-respondents the cause was submitted on the brief of *William E. Callahan, Jr.* and *Maria K. Myers* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Gail Anderson, Beverly Johnson, Marcia Wellnitz and Mary Ann Zifko (the teachers) appeal a summary judgment dismissing their lawsuit against the school district of Ashland and the Board of Educa-

tion of the school district of Ashland. The teachers contend that the trial court erred by concluding that the relief provided in sec. 117.25(2)(b)1, Stats.,[1] is unavailable to them because the reorganization of the Ondossagon school district was completed before sec. 117.25 was created. The teachers argue that the relief provided under sec. 117.25(2)(b) is available to employes who, due to school district reorganization, were laid off on or after May 8, 1990.

We conclude that sec. 117.25(2)(b), Stats., affords relief to school district employes who are laid off on or after May 8, 1990, as a result of detachment of territory from one school district and attachment to another, regardless of the statutory authority under which the reorganization process was initiated. We further conclude that the teachers are entitled to maintain a private action against the Ashland school district based on its failure to give them hiring priority for three years after the reorganization's effective date. Because these issues are dispositive of the appeal, we reverse the judgment without addressing the other issues the teachers raise.[2]

The facts are undisputed. In summer 1989, Ondossagon entered into negotiations for reorganization with the Ashland, Washburn and Drummond school districts. The school boards involved determined that all of Ondossagon's property would be detached and attached to the Ashland, Washburn and Drummond school districts. Ondossagon would then be dissolved,

---

[1] All sec. 117.25, Stats., hereinafter referred to are 1989-90.

[2] The teachers also argue that (1) the reorganization was not complete until June 30, 1990, the date the last reorganization order issued by the School District Boundary Appeal Board (SDBAB) was effective and (2) if relief is unavailable under sec. 117.25(2)(b), they are entitled to relief under sec. 117.25(1)(d).

with its assets and liabilities divided among the other school districts. The reorganization was commenced under sec. 117.08, Stats. (1987-88). In the fall of 1989, the school districts held several referenda, which resulted in approval of the reorganization. The school boards confirmed the results and issued reorganization orders detaching various parcels of land from Ondossagon and attaching them to the other school districts. The last of these orders was issued in December 1989. Meanwhile, the legislature amended ch. 117 to be effective January 1, 1990. After the periods to appeal the various reorganizations orders expired, the SDBAB issued orders finalizing the reorganization orders, with effective dates ranging from February to June 1990.

Ondossagon continued operation until the end of the 1989-90 school year in June 1990. Effective June 30, 1990, the teachers were laid off. The teachers wrote letters to the Ashland school district stating that they were interested in obtaining various employment positions with the Ashland school district for which they were certified. The Ashland school district, although it had openings for which the teachers were certified in the 1990-91 school year and later years, declined to hire the teachers, opting instead to fill the positions with less experienced teachers.

The teachers filed a complaint alleging that under sec. 117.25(2)(b), Stats., the Ashland school district was required to hire the teachers to fill open positions for which they were certified. The relief the teachers sought is twofold: (1) that the teachers be hired by the Ashland school district in new or vacant positions for which they are certified and (2) reimbursement for lost salary and benefits and costs sustained as a result of the Ashland school district's failure to hire them, together with interest, attorney fees and costs.

The Ashland school district moved the trial court for summary judgment dismissing the teachers' complaint. The trial court granted the motion and dismissed the teachers' complaint. The court concluded that because the school boards passed and filed the resolutions of detachment and reorganization prior to January 1, 1990, the effective date of amended ch. 117, Stats., the relief afforded by sec. 117.25(2)(b) was unavailable to the teachers. The court further concluded that because the reorganization was a detachment and attachment of territory and not a consolidation of school districts, sec. 117.25(1)(d)1 was also inapplicable.

The teachers contend that the trial court erred by concluding that the relief afforded by sec. 117.25(2)(b), Stats., was unavailable to the teachers. The issue presented in this appeal concerns the interpretation and construction of sec. 117.25(2)(b). We review questions of statutory interpretation as questions of law independently of the trial court's determination. *Zimmerman v. DHSS*, 169 Wis. 2d 498, 504, 485 N.W.2d 290, 292 (Ct. App. 1992). The purpose of the rules of statutory construction is to give effect to the legislative intent. *Id.* When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *Id.* If the statute's language is ambiguous, we look to the statute's scope, history, context, subject matter and object to determine the legislature's intent. *Id.* at 504-05, 485 N.W.2d at 292.

Section 117.25(2)(b), Stats., provides in part:

> (2) Detachment and attachment of territory. When territory is detached from one school district

and attached to an adjoining school district under ss. 117.11 to 117.132, all of the following apply:

. . . .

(b) 1. Any employe of the school district from which territory is detached who is laid off as a result of the reorganization has priority over other persons, except employes of the school district to which the territory is attached and former employes of that school district who were laid off from that school district, for 3 years after the effective date of the reorganization for new positions and vacant positions for which he or she is qualified in the school district to which the territory is attached.

■■

We conclude that the language, "When territory is detached . . . and attached . . . under ss. 117.11 to 117.132, [Stats.]" is ambiguous because it is capable of being understood by reasonably well informed persons in either of two or more senses. *See In re D.S.*, 142 Wis. 2d 129, 134, 416 N.W.2d 292, 294 (1987). One reasonable construction is that the provisions of sec. 117.25(2) apply *only* to detachments and attachments *commenced* under sec. 117.11 to 117.132. Another reasonable construction is that the provisions of sec. 117.25(2) apply to layoffs resulting from reorganizations that occur after the statute's effective date, regardless of the statutory authority under which the reorganization proceeded. Because the statute is ambiguous, we look to the statute's scope, history, context, subject matter and object to determine the legislature's intent. *Zimmerman,* 169 Wis. 2d at 504-05, 485 N.W.2d at 292.

In 1989, the legislature amended ch. 117, Stats. The amendment, among other things, renumbers old ch. 117, repeals sec. 117.08 and recreates it in different

sections and creates sec. 117.25. Section 117.25(2)(b) was first created by 1989 Wis. Act 114. The original bill creating new ch. 117 provided that it would be initially effective only as to reorganizations that took effect after January 1, 1990, the effective date of new ch. 117. Governor Thompson vetoed the portions of 1989 Act 114 creating sec. 117.25 and providing for its applicability only to reorganizations taking effect after January 1, 1990, because the governor was concerned that the priority in hiring rights was not limited in time. The legislature recreated sec. 117.25(2)(b)1 in § 16 1989 Wis. Act 287. The legislature reenacted sec. 117.25(2)(b) and limited the priority in hiring rights to a three-year period. By reenacting this provision after the governor's veto, the legislature demonstrated its clear desire to grant school district employes laid off as a result of reorganization priority in hiring rights for a three-year period.

The legislature also redefined the effective dates of new sec. 117.25(2)(b)1, Stats., in § 19(1) 1989 Wis. Act 287, which provides, "The creation of section 117.25(2)(b) of the statutes first applies to *layoffs* that take effect on [May 8, 1990]." (Emphasis added.) Significantly, the legislature stated the effective date of sec. 117.25(2)(b) in terms of when the layoffs occurred, rather than tying the effective date to the date the reorganization process was initiated or the statutory authority under which the reorganization was initiated. We conclude that this legislative history clearly indicates the legislature's intent that the relief afforded in sec. 117.25(2)(b) applies to school district employes who are laid off as a result of school district reorganization after May 8, 1990, regardless of the statutory authority under which the reorganization process was initiated.

As the teachers note, § 19(2) 1989 Wis. Act 287, dealing with other portions of new ch. 117, Stats., "first applies to *resolutions adopted . . . and to petitions filed . . . on January 1, 1990.*" The teachers argue that this scheme further demonstrates the legislature's intent that the layoff provisions of sec. 117.25(2)(b) apply to layoffs effective on or after May 8, 1990, regardless of whether the layoffs resulted from a resolution/petition initiated before January 1, 1990. Otherwise, the teachers argue, the legislature would have made all of sec. 117.25 applicable only to resolutions/petitions initiated after January 1, 1990. We conclude that the legislature's different treatment of two portions of new ch. 117 further compels the conclusion that the legislature intended sec. 117.25(2)(b) to apply to all layoffs effective after May 8, 1990. Therefore, because the teachers' layoffs were effective on June 30, 1990, sec. 117.25(2)(b) applies.

Because we conclude that sec. 117.25(2)(b), Stats., applies to all layoffs effective after May 8, 1990, regardless of the statute under which authority the school district reorganization was initiated or completed, we need not determine whether the reorganization before us was completed before or after January 1, 1990. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). We therefore reverse the judgment.

Because the trial court concluded that the relief provided under sec. 117.25(2)(b), Stats., was unavailable to the teachers, it did not reach the question whether the teachers are entitled to monetary damages based on the Ashland school district's failure to give them hiring priority. We will address this issue in the interest of judicial economy.

511

The Ashland school district contends that the teachers are not entitled to monetary damages because sec. 117.25(2)(b), Stats., demonstrates the legislature's intent that "the right of priority to qualified individuals be enforceable by the remedy of employment for three years following the detachment." (Emphasis omitted.) The teachers respond that the legislature could not have intended that the sole remedy for the school district's failure to give the teachers hiring priority for three years as required by sec. 117.25(2)(b) is "the remedy of employment for three years following the detachment." The teachers argue that, because sec. 117.25(2)(b) does not expressly provide for a remedy if a school district fails to give employes hiring priority for three years, the trial court is empowered to award monetary damages.

We conclude that the plain language of sec. 117.25(2)(b), Stats., while creating a right, does not provide a remedy for the school district's violation of that right. The plain language creates the right to hiring priority and limits that right to three years after the effective date of the reorganization. No statutory provision exists that defines the remedy for school district employes who are not given hiring priority for three years after the effective date of the reorganization, in violation of sec. 117.25(2)(b). Our supreme court stated in *Yanta v. Montgomery Ward & Co.,* 66 Wis. 2d 53, 61, 224 N.W.2d 389, 393-94 (1974):

> It is well settled . . . that a private right of action may be predicated upon the violation of a statute containing a mandate to do an act for the benefit of another . . . even though no such right of action is given by the express terms of such statute; this depends upon intent to impose liability,

whether the statute purports merely to secure the safety or welfare of the public generally, or the duty prescribed for the benefit of an individual specially injured by its violation.

This situation is comparable to the tort law doctrine that the violation of certain statutes constitutes negligence per se. . . . [W]here a defendant violates a statute designed to prevent a certain kind of harm to a certain class of persons, and the plaintiff was so harmed and was in that class of persons, then violation of the statute constitutes negligence per se even though the statute contains no such express provision. Although the present action is not founded on negligence, the situations are similar, since in violating the statute, defendant breached a duty owed to the plaintiff. Defendant should therefore be required to compensate the plaintiff for causing the kind of harm the statute was designed to prevent. (Citation and footnote omitted.)

■
Section 117.25(2)(b), Stats., grants a specific benefit to school district employes who are laid off as a result of school district reorganization to prevent losses caused by prolonged unemployment, where positions are available in the new school district. Additionally, the teachers note that "[i]f a court were not empowered to award any monetary relief, a school district could choose to ignore [sec. 117.25(2)(b)] with virtual impunity, since the district could rest assured that there would be no monetary consequences for its decision to violate the law." We conclude that the legislature could not have intended to create a right that was virtually unenforceable due to the absence of a statutory penalty for violating that right. We therefore conclude that the teachers are entitled to maintain a private action

against the school district based on its failure to give them hiring priority during the three-year period following the reorganization's effective date.

*By the Court.*—Judgment reversed.